**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reliance Hospitality LLC, | No. CV-23-00229-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| 2930 Waterfront Parkway IN LLC, et al., | |
| Defendants. | |

Plaintiff Reliance Hospital LLC ("Plaintiff") seeks summary judgment on the five breach of contract claims it has brought against Defendants 2930 Waterfront Parkway IN, LLC, Crown South Hill Owners LLC, 500 Mansfield Avenue Owner LLC, 101 Mall Boulevard Owner LLC, and 383 South Center Street Windsor Locks, LLC (collectively, "Defendants") (Doc. 66). Defendants have not filed a response. (Doc. 69). The Court will grant Plaintiff's Motion (Doc. 66).

**I.     Background**

Plaintiff is a hotel management company based in Phoenix, Arizona, overseeing hotels across the country. Under common ownership, Defendants owned multiple hotel properties in various states. Between 2019 and 2022, Defendants agreed to have Plaintiff manage five separate hotel properties. To establish this arrangement, Plaintiff and each Defendant entered into identical Hotel Management Agreements ("HMA").

On February 3, 2023, Plaintiff, believing Defendants to be in violation of the HMAs, brought suit against Defendants. (*See* Doc. 1). In its Complaint, Plaintiff brought a

singular claim of breach of contract and the implied covenant of good faith and fair dealing against each Defendant. (*See id.* at ¶¶ 34–68). Plaintiff says that each of the Defendants breached their respective HMA by failing to adequately fund their hotels' operating account sufficient to cover, among other things, the hotel's payroll, employee benefits, and reimbursement to Plaintiff for out-of-pocket expenses it incurred in the operation of the hotels. (Doc. 66 at 4). Defendants answered the Complaint and later twice amended their Answer, ultimately filing their Second Amended Answer ("SAA") on January 8, 2024, and affirmatively alleged seven counterclaims against Plaintiff. (*See* Docs. 7, 20, 39).

Defendants' counsel moved to withdraw from the case, without client consent, in January 2025, on the grounds that Defendants had failed to pay their attorneys' fees. (Doc. 45). The Court permitted Defendants' counsel to withdraw and ordered the Defendant LLCs to obtain new counsel by February 10, 2025. (*See* Doc. 47). Defendants failed to acquire new representation by the February deadline and Plaintiff accordingly filed applications for entry of default against each of the Defendants. (Doc. 53). In light of Defendants' timely-filed SAA, default was not entered and the Court set the matter for a Status Conference. (Doc. 55). Defendants, however, did not appear at the Status Conference. (Doc. 56). After receiving several chances to respond, the Court dismissed Defendants' remaining counterclaims on November 5, 2025, for failure to prosecute. (Doc. 72).[1] Plaintiff now moves for summary judgment on its breach of contract claims against Defendants.[2]

---

[1] Defendants' Count V for breach of the HMA was previously dismissed with prejudice on September 16, 2024. (Doc. 41).

[2] In its Complaint, Plaintiff's five claims are pled as "breach of contract and the implied covenant of good faith and fair dealing" (*see* Doc. 1 at ¶¶ 34–68). Plaintiff's Motion for Summary Judgment, however, focuses only on Defendants' breach of contract and not their breaches of the good faith covenant. Moreover, Plaintiff has not shown evidence of bad faith or that the damages it seeks are separate and distinct from the breach of contract claim. The Court has therefore only considered the merits of Plaintiff's breach of contract claims and presumed that any affiliated breach of the good faith covenant claims have been abandoned. *See Friends of Big Bear Valley v. U.S. Forest Serv.*, 776 F. Supp. 3d 824, 831 n.6 (C.D. Cal. 2025) ("In the Complaint, plaintiff also alleges violations of NEPA based on defendants' failure to consider scientific evidence about the Project's impact on bald eagles and other species. None of the parties address these allegations in their respective summary judgment motions, and as such they are abandoned.").

## II.    Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Celotex Corp.*, 477 U.S. at 324 (holding the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial"). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"[W]here [] the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The

standard for granting summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)[.]" *Celotex*, 477 U.S. at 323.

When a summary judgment motion is unopposed, a district court must "determine whether summary judgment is appropriate—that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Leramo v. Premier Anesthesia Med. Group*, 2011 WL 2680837, *8 (E.D. Cal. 2011) (quoting *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990)). A district court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, [] rather [it] must consider the merits of the motion." *Id.* (quoting *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004)). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.* (quoting *One Piece of Real Property*, 363 F.3d at 1101).

**III.    Discussion**

To prevail on a breach of contract claim under Arizona law, "a plaintiff must show a contract, a breach of contract, and damages." *Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 988 (D. Ariz. 2007) (*citing Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)). In Arizona, a plaintiff bears the burden of showing contract damages with "reasonable certainty." *Gilmore*, 386 P.2d at 82. Reasonable certainty is provided where there is "some reasonable method of computing [the] net loss." *Lininger v. Dine Out Corp.*, 639 P.2d 350 (Ariz. Ct. App. 1981) (citing *Irish v. Mountain States Tel. & Tel. Co.*, 500 P.2d 151, 154 (Ariz. 1972)); *see also Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963) ("[T]he evidence must make an 'approximately accurate estimate' possible.") (quoting *Martin v. LaFon*, 100 P.2d 182 (Ariz. 1940))..

In their SAA, Defendants do not dispute the existence or validity of the HMAs. (*See* Doc. 39 at ¶¶ 35, 42, 49, 56, 63). They further state that the terms of the HMAs speak for themselves. (*See id.* at ¶¶ 23–29). Therefore, the Court will assess whether Plaintiff has met it burden of establishing breach and its alleged damages with reasonable certainty.

A.    **Count I against 2930 Waterfront Parkway IN, LLC**

Plaintiff and 2930 Waterfront Parkway IN, LLC ("2930 Waterfront") entered into its HMA (the "Waterfront HMA") on June 25, 2020.  (Doc. 66-3 at 3).  The Waterfront HMA was a 36-month agreement for a hotel property located at 2930 Parkway West Drive, Indianapolis, IN 46214.  (*Id.* at 3, 5).  The Waterfront HMA establishes the terms under which Plaintiff would take over the operation, direction, management, and supervision of the above hotel property owned by 2930 Waterfront.  (*See generally id.*).

Under the Waterfront HMA, 2930 Waterfront is responsible for "reimbursing [Plaintiff], as part of the Operating Expenses, and shall deposit into the Operating Account, as provided below, the salary, payroll taxes and fringe benefits under the Benefits Plans of all Hotel Personnel for [Plaintiff]."  (*Id.* at 5).  2930 Waterfront is required to provide the funds for these expenses at least seven days prior to Plaintiff's payroll date.  (*Id.*)  The Waterfront HMA further provides that Plaintiff is not liable for any "expenses, debts, liabilities and obligations by reason of its direction, management, supervision and operation of the Hotel on behalf of [2930 Waterfront]" and Plaintiff may reimburse itself from the "Operating Account" for "payroll expense of any employee" who is performing a necessary job function at the Hotel.  (*Id.* at 6–7).  Additionally, under the Waterfront HMA, 2930 Waterfront must pay Plaintiff a $2,500.00 monthly management fee, "until which time the hotel opens as a franchised branded hotel[.]"  (*Id.* at 8).

Either party was entitled to terminate the Waterfront HMA effective immediately, in the event of the other party's gross negligence, willful misconduct, or fraud.  (*Id.* at 9).  Either party could also terminate the HMA in the event of either party's failure "to pay the other party any sums as and when they become due hereunder and such failure shall continue for ten (10) days after notice of the failure has been given to the party who has failed to pay these sums."  (*Id.*)  If such an event occurred that was attributable to 2930 Waterfront, under the Liquidated Damages provision, Plaintiff is entitled to "all Management Fees prorated to the date of termination" "all Operating Expenses that have not been paid or reimbursed," and "all other amounts due under this Agreement," within

five days of termination.  (*Id.* at 10).

Plaintiff says 2930 Waterfront failed to add sufficient funds to the hotel's Operating Account from October 22, 2021, to February 20, 2022, which caused Plaintiff to incur out-of-pocket expenses to cover its employees' payroll, workers' compensation premiums, and health insurance premiums.  (Doc. 66-1 at ¶ 7).  Plaintiff's executive "prepared and sent written notice to 2930 Waterfront informing them that they were in default and gave them 10 days' [sic] to cure."  (*Id.* at ¶ 8).  However, 2930 Waterfront failed to cure, and Plaintiff subsequently terminated the Waterfront HMA, effective March 1, 2022.  (*Id.*)

Defendants denied any such breach in their SAA (Doc. 39 at ¶ 37) but has otherwise failed to substantiate their defense. Plaintiff sent Requests for Admission ("RFA") to 2930 Waterfront, stating "[a]dmit that [2930 Waterfront] did not adequately fund the Hotel's operating expenses as required by the HMA;" "[a]dmit that failing to fund the Hotel's operating account to cover the Hotel's operating expenses constitutes a default under the HMA;" and "[a]dmit that [2930 Waterfront] failed to cure [its] default under the HMA despite Reliance providing You with notice and an opportunity to cure the default." (Doc. 66-2 at 19–20).  The RFAs were sent to 2930 Waterfront on December 20, 2024, but, to date, they have gone unanswered.  (Doc. 66-1 at ¶ 5); F. R. Civ. P. 36(a)(3) (failure to timely respond to requests for admission results in automatic admission of the matters requested as Federal Rule of Civil Procedure 36(a) is self-executing).  The Court will accordingly construe 2930 Waterfront's failure to respond as admission of its failure to fund the Operating Account and that such a failure is a breach of the HMA.

With regard to damages, Plaintiff has offered the uncontested declaration of Bryan Fish, an executive with Plaintiff, in which Mr. Fish attests that due to 2930 Waterfront's failure to fund the Operating Account, Plaintiff was unable to reimburse itself and, under the HMA, is owed "$38,275.74 (employee payroll); $1,848.00 (workers' compensation premiums); and $28,774.32 (health insurance premiums)."  (Doc. 66-1 at ¶ 9).  Mr. Fish also states that "[b]ecause there were sixteen months left in the initial term of the HMA, 2930 Waterfront is liable for Liquidated Damages in the amount of $40,000.00 (i.e., 16

months x $2500)." (*Id.* at ¶ 10). In all, Plaintiff says its damages resulting from 2930 Waterfront's breach are $108,898.06. These amounts are uncontested but reasonably supported and certain.

Based on the foregoing facts, Plaintiff has established that there is no factual dispute as to the existence of a contract, 2930 Waterfront's breach of that contract, and Plaintiff's resulting damages. Defendants, conversely, have not produced any evidence that demonstrates a disputed issue of material fact, and therefore Plaintiff is entitled to judgment as a matter of law on its breach of contract claim against Defendant 2930 Waterfront.

**B.      Count II against Crown South Hill Owners, LLC**

Plaintiff and Crown South Hill Owners, LLC ("Crown South") entered into its HMA (the "Crown HMA") on August 4, 2021. (Doc. 66-4 at 3). The Crown HMA was a 36-month agreement for a hotel property located at 164 Fort Couch Road, Pittsburgh, PA 15241. (*Id.* at 3, 5).

The Crown HMA establishes the terms under which Plaintiff would take over the operation, direction, management, and supervision of the above hotel property owned by Crown South. (*See generally id.*).

In relevant part, under the Crown HMA, Crown South is responsible for "reimbursing [Plaintiff], as part of the Operating Expenses, and shall deposit into the Operating Account, as provided below, the salary, payroll taxes and fringe benefits under the Benefits Plans of all Hotel Personnel for [Plaintiff]." (*Id.* at 5). Crown South is required to provide the funds for these expenses at least seven days prior to Plaintiff's payroll date. (*Id.*) The Crown HMA further provides that Plaintiff is not liable for any "expenses, debts, liabilities and obligations by reason of its direction, management, supervision and operation of the Hotel on behalf of [Crown South]" and Plaintiff may reimburse itself from the "Operating Account" for "payroll expense of any employee" who is performing a necessary job function at the Hotel. (*Id.* at 6–7).

Either party was entitled to terminate the HMA effective immediately, in the event of the other party's gross negligence, willful misconduct, or fraud. (*Id.* at 9). Either part

could also terminate the HMA in the event of either party's failure "to pay the other party any sums as and when they become due hereunder and such failure shall continue for ten (10) days after notice of the failure has been given to the party who has failed to pay these sums." (*Id.*)  If such an event occurred that was attributable to Crown South, Plaintiff is entitled to "all Management Fees prorated to the date of termination" "all Operating Expenses that have not been paid or reimbursed," and "all other amounts due under this Agreement," within five days of termination.  (*Id.* at 10).

Plaintiff says Crown South failed to add sufficient funds to the hotel's Operating Account during the Crown HMA's term, which required Plaintiff to incur out-of-pocket expenses to cover its employees' health insurance premiums in the amount of $20,888.98. (Doc. 66-1 at ¶ 11).  Crown South then "sought to terminate the Crown South Agreement without triggering Liquidated Damages, which [Plaintiff] permitted them to do so long as Crown South reimbursed [Plaintiff] for its out-of-pocket expenses."  (*Id.* at ¶ 12).  The Crown HMA was terminated in October 2022, but Crown South refused to reimburse Plaintiff for the health insurance premiums.  (*Id.* at ¶ 13).

Defendants denied that it breached the HMA by failing to pay for the health insurance premiums (Doc. 39 at ¶ 44) but has failed to substantiate its defense.  Moreover, Plaintiff sent an RFA to Crown South, asking Crown South to "[a]dmit that [Crown South] did not adequately fund the Hotel's operating expenses as required by the HMA" and "[a]dmit that failing to fund the Hotel's operating account to cover the Hotel's operating expenses constitutes a default under the HMA."  (Doc. 66-2 at 24).  The RFAs were sent to Crown South on December 20, 2024, but the admissions have since gone unanswered. (Doc. 66-1 at ¶ 5); Fed. R. Civ. P. 36(a)(3).  Consequently, Crown South has admitted to its failure to fund the Operating Account and that such a failure is a breach of the HMA.

Due to Crown South's failure to fund the Operating Account, Mr. Fish says Plaintiff was unable to reimburse itself for the employees' health insurance premiums and is owed $20,888.98.  (Doc. 66-1 at ¶ 13).

Based on the foregoing facts, Plaintiff has established that there is no factual dispute

as to the existence of a contract, Crown South's breach of that contract, or Plaintiff's resulting damages.   Defendants, conversely, have not produced any evidence that demonstrates a disputed issue of material fact, and therefore Plaintiff is entitled to judgment as a matter of law on its breach of contract claim against Defendant Crown South.

**C.    Count III against 500 Mansfield Avenue Owner, LLC**

Plaintiff and 500 Mansfield Avenue Owner, LLC ("500 Mansfield") entered into its HMA (the "Mansfield HMA") on June 21, 2021. (Doc. 66-5 at 3).  The Mansfield HMA was a 36-month agreement for a hotel property located at 500 Mansfield Avenue, Pittsburgh, PA 15205. (*Id.* at 3, 5).  The Mansfield HMA establishes the terms under which Plaintiff would take over the operation, direction, management, and supervision of the above hotel property owned by 500 Mansfield.  (*See generally id.*).

Under the Mansfield HMA, 500 Mansfield is responsible for "reimbursing [Plaintiff], as part of the Operating Expenses, and shall deposit into the Operating Account, as provided below, the salary, payroll taxes and fringe benefits under the Benefits Plans of all Hotel Personnel for [Plaintiff]." (*Id.* at 5).  500 Mansfield is required to provide the funds for these expenses at least seven days prior to Plaintiff's payroll date. (*Id.*)  The Mansfield HMA further provides that Plaintiff is not liable for any "expenses, debts, liabilities and obligations by reason of its direction, management, supervision and operation of the Hotel on behalf of [500 Mansfield]" and Plaintiff may reimburse itself from the "Operating Account" for "payroll expense of any employee" who is performing a necessary job function at the Hotel. (*Id.* at 6–7).

Either party was entitled to terminate the HMA effective immediately, in the event of the other party's gross negligence, willful misconduct, or fraud. (*Id.* at 9).  Either part could also terminate the HMA in the event of either party's failure "to pay the other party any sums as and when they become due hereunder and such failure shall continue for ten (10) days after notice of the failure has been given to the party who has failed to pay these sums." (*Id.*)  If such an event occurred that was attributable to 500 Mansfield, Plaintiff is entitled to "all Management Fees prorated to the date of termination" "all Operating

Expenses that have not been paid or reimbursed," and "all other amounts due under this Agreement," within five days of termination. (*Id.* at 10).

Plaintiff says during the term of the Mansfield HMA, 500 Mansfield failed to add sufficient funds to the hotel's Operating Account, which required Plaintiff to incur out-of-pocket expenses to cover its employees' health insurance premiums in the amount of $49,563.06. (Doc. 66-1 at ¶ 14). 500 Mansfield then "sought to terminate the [Mansfield HMA] without triggering Liquidated Damages, which [Plaintiff] permitted them to do so long as 500 Mansfield reimbursed [Plaintiff] for its out-of-pocket expenses." (*Id.* at ¶ 15). The Mansfield HMA was terminated in October 2022, but 500 Mansfield refused to reimburse Plaintiff for the health insurance premiums. (*Id.* at ¶ 13).

Defendants have again failed to offer any evidence supporting the disavowal of the contractual breach. (Doc. 39 at ¶ 51). Plaintiff sent an RFA to 500 Mansfield, stating "[a]dmit that [500 Mansfield] did not adequately fund the Hotel's operating expenses as required by the HMA" and "[a]dmit that failing to fund the Hotel's operating account to cover the Hotel's operating expenses constitutes a default under the HMA." (Doc. 66-2 at 14–15). The RFA was sent to 500 Mansfield on December 20, 2024, but, to date, it has gone unanswered. (Doc. 66-1 at ¶ 5); Fed. R. Civ. P. 36(a)(3). The Court consequently finds that 500 Mansfield has admitted to its failure to fund the Operating Account and that such a failure is a breach of the HMA.

Due to 500 Mansfield's failure to fund the Operating Account, Mr. Fish avers that Plaintiff was unable to reimburse itself for the employees' health insurance premiums and is owed $49,563.06. (Doc. 66-1 at ¶ 16).

Based on the foregoing facts, Plaintiff has established that there is no factual dispute as to the existence of a contract, 500 Mansfield's breach of that contract, or Plaintiff's resulting damages. Defendants, conversely, have not produced any evidence that demonstrates a disputed issue of material fact, and therefore Plaintiff is entitled to judgment as a matter of law on its breach of contract claim against Defendant 500 Mansfield.

/ / /

- 10 -

### D.   Count IV against 101 Mall Boulevard Owner, LLC

Plaintiff and 101 Mall Boulevard Owners, LLC ("101 Mall") entered into its HMA (the "Mall HMA") on January 15, 2020.  (Doc. 66-6 at 3).  The Mall HMA was a 36-month agreement for a hotel property located at 101 Mall Blvd., Monroeville, PA 15146.  (*Id.* at 3, 5).

The Mall HMA establishes the terms under which Plaintiff would take over the operation, direction, management, and supervision of the above hotel property owned by 101 Mall.  (*See generally id.*).

The Mall HMA provides that 101 Mall is responsible for "reimbursing [Plaintiff], as part of the Operating Expenses, and shall deposit into the Operating Account, as provided below, the salary, payroll taxes and fringe benefits under the Benefits Plans of all Hotel Personnel for [Plaintiff]."  (*Id.* at 5).  101 Mall is required to provide the funds for these expenses at least seven days prior to Plaintiff's payroll date.  (*Id.*)  The Mall HMA further provides that Plaintiff is not liable for any "expenses, debts, liabilities and obligations by reason of its direction, management, supervision and operation of the Hotel on behalf of [101 Mall]" and Plaintiff may reimburse itself from the "Operating Account" for "payroll expense of any employee" who is performing a necessary job function at the Hotel.  (*Id.* at 6–7).  Additionally, 101 Mall must pay Plaintiff a monthly management fee of $5,000.00 or 2.5% total hotel revenue, whichever is greater.  (*Id.* at 8).

Either party could terminate the HMA in the event of either party's failure "to pay the other party any sums as and when they become due hereunder and such failure shall continue for ten (10) days after notice of the failure has been given to the party who has failed to pay these sums."  (*Id.* at 9).  If such an event occurred that was attributable to 101 Mall, Plaintiff is entitled to "all Management Fees prorated to the date of termination," "all Operating Expenses that have not been paid or reimbursed," and "all other amounts due under this Agreement," within five days of termination.  (*Id.* at 10).

Plaintiff says 101 Mall failed to add sufficient funds to the hotel's Operating Account during the Mall HMA's term, which caused Plaintiff to incur out-of-pocket

expenses to cover its employees' payroll, workers' compensation premiums, direct deposit liability, and health insurance premiums. (Doc. 66-1 at ¶ 17). Plaintiff's executive "provided 101 Mall with written notice of its default and 10 days' opportunity to cure." (*Id.* at ¶ 18). However, 101 Mall failed to cure, and Plaintiff subsequently terminated the Mall HMA, effective March 1, 2022.

Defendants initially denied any such breach in their SAA. (Doc. 39 at ¶ 58). But Plaintiff later sent an RFA to 101 Mall, asking 101 Mall to admit "[a]dmit that [101 Mall] did not adequately fund the Hotel's operating expenses as required by the HMA" and "[a]dmit that failing to fund the Hotel's operating account to cover the Hotel's operating expenses constitutes a default under the HMA," 101 Mall failed to timely respond. (Doc. 66-2 at 4; Doc. 66-1 at ¶ 5). Thus, 101 Mall has admitted to its failure to fund the Operating Account and that such a failure is a breach of the HMA.

Because of 101 Mall's failure to fund the Operating Account, Mr. Fish says Plaintiff was unable to reimburse itself and, under the HMA, is owed: "payroll ($152,669.16); workers' compensation premiums ($39,230.99); [and] direct deposit liability ($4,203.01)." (Doc. 66-1 at ¶ 17).[3] Plaintiff is also requesting liquidated damages from the Management Fee owed under the HMA. (Doc. 66 at 10). Although Plaintiff does not support this claim in its Declaration, its liquidated damages are readily ascertainable based on the HMA's terms and the above-established facts about the HMA's termination. Because there were ten months left in the Mall HMA's initial term upon termination, 101 Mall is liable for Liquidated Damages in the amount of $50,000.00 (10 months x $5000). In all, Plaintiff's damages resulting from 101 Mall's breach are $246,103.16.

Thus, Plaintiff has established that there is no factual dispute as to the existence of

---

[3] Plaintiff states that it also incurred expenses for health insurance premiums (Doc. 66-1 at ¶ 17), and it states in its Motion that it incurred expenses for employee health insurance premiums in the amount of $39,230.99. (Doc. 66 at 10). Plaintiff does not, however, establish its damages for health insurance premiums in its Declaration. (*See* Doc. 66-1 at ¶ 17). Moreover, in the Declaration, $39,230.99 is the amount claimed for workers' compensation premiums. As this has been established by sworn statement, the Court finds that Plaintiff's workers' compensation premium damages have been established as a fact, but its health insurance damages under the 101 Mall HMA have not. The Court will disregard the amounts claimed by Plaintiff's counsel in its Motion and adhere to the damages asserted in the Declaration.

a contract, 101 Mall's breach of that contract, or Plaintiff's resulting damages. Defendants, conversely, have not produced any evidence that demonstrates a disputed issue of material fact, and therefore Plaintiff is entitled to judgment as a matter of law on its breach of contract claim against Defendant 101 Mall.

### E. Count V against 383 South Center St. Windsor Locks, LLC

Plaintiff and 383 South Center St. Windsor Locks, LLC ("383 South") entered into its HMA (the "South HMA") on December 17, 2019. (Doc. 66-7 at 3). The South HMA was a 36-month agreement for a hotel property located at 383 S. Center Street, Windsor Locks, CT, 06096. (*Id.* at 3, 5).

The South HMA establishes the terms under which Plaintiff would take over the operation, direction, management, and supervision of the above hotel property owned by 383 South. (*See generally id.*).

Under the South HMA, 383 South is responsible for "reimbursing [Plaintiff], as part of the Operating Expenses, and shall deposit into the Operating Account, as provided below, the salary, payroll taxes and fringe benefits under the Benefits Plans of all Hotel Personnel for [Plaintiff]." (*Id.* at 5). 383 South is required to provide the funds for these expenses at least seven days prior to Plaintiff's payroll date. (*Id.*) The South HMA further provides that Plaintiff is not liable for any "expenses, debts, liabilities and obligations by reason of its direction, management, supervision and operation of the Hotel on behalf of [383 South]" and Plaintiff may reimburse itself from the "Operating Account" for "payroll expense of any employee" who is performing a necessary job function at the Hotel. (*Id.* at 6–7). Additionally, under the South HMA, 383 South must pay Plaintiff a $2,500.00 monthly management fee, "till hotels opens [sic] as a Ramada." (*Id.* at 8).

Either part could also terminate the HMA in the event of either party's failure "to pay the other party any sums as and when they become due hereunder and such failure shall continue for ten (10) days after notice of the failure has been given to the party who has failed to pay these sums." (*Id.* at 9). If such an event occurred that was attributable to 383 South, Plaintiff is entitled to "all Management Fees prorated to the date of termination"

"all Operating Expenses that have not been paid or reimbursed," and "all other amounts due under this Agreement," within five days of termination. (*Id.* at 10).

Plaintiff says 383 South failed to add sufficient funds to the hotel's Operating Account during the South HMA's term, which forced Plaintiff to incur out-of-pocket expenses to cover its employees' payroll and health insurance premiums. (Doc. 66-1 at ¶ 19). Plaintiff "provided 383 South with written notice of its default and 10 days' opportunity to cure." (*Id.* at ¶ 20). However, 383 South failed to cure, and Plaintiff subsequently terminated the South HMA, effective March 1, 2022.

Defendants initially denied any such breach in their SAA. (Doc. 39 at ¶ 65). But Plaintiff's December 20, 2024, RFA to 383 South asking it to "[a]dmit that [383 South] did not adequately fund the Hotel's operating expenses as required by the HMA" and "[a]dmit that failing to fund the Hotel's operating account to cover the Hotel's operating expenses constitutes a default under the HMA" went unanswered. (Doc. 66-2 at 9; Doc. 66-1 at ¶ 5). Consequently, 383 South has admitted to its failure to fund the Operating Account and that such a failure is a breach of the HMA.

Because of 383 South's failure to fund the Operating Account, Mr. Fish says Plaintiff was unable to reimburse itself and, under the HMA, is owed: "payroll ($70,408.03) and health insurance premiums ($24,452.71)." (Doc. 66-1 at ¶ 19). Plaintiff is also requesting its liquidated damages from the Management Fee owed under the HMA. (Doc. 66 at 10). Although Plaintiff does not support this claim in its Declaration, its liquidated damages are ascertainable based on the HMA's terms and the above established facts about the HMA's termination. Because there were nine months left in the South HMA's initial term upon termination, 383 South is liable for Liquidated Damages in the amount of $22,500.00 (9 months x $2,500). In all, Plaintiff's damages resulting from 383 South's breach are $117,360.74.

Based on the foregoing facts, Plaintiff has established that there is no factual dispute as to the existence of a contract, 383 South's breach of that contract, and Plaintiff's resulting damages. Defendants, conversely, have not produced any evidence that

demonstrates a disputed issue of material fact, and therefore Plaintiff is entitled to judgment as a matter of law on its breach of contract claim against Defendant 383 South.

In sum, Plaintiff has demonstrated that it is entitled to summary judgment on each of its claims for breach of contract.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 66) is **GRANTED**.  The Clerk of Court is kindly directed to enter judgment and close this matter as follows:

- judgment in favor of Plaintiff in the amount of $108,898.06 against Defendant 2930 Waterfront Parkway IN, LLC;

- judgment in favor of Plaintiff in the amount of $20,888.98 against Defendant Crown South Hill Owners, LLC;

- judgment in favor of Plaintiff in the amount of $49,563.06 against Defendant 500 Mansfield Avenue Owner, LLC;

- judgment in favor of Plaintiff in the amount of $246,103.16 against Defendant 101 Mall Boulevard Owner, LLC; and

- judgment in favor of Plaintiff in the amount of $117,360.74 against Defendant 383 South Center St. Windsor Locks, LLC.

**IT IS FURTHER ORDERED** that Plaintiff is awarded post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. 1961(a).

**IT IS FINALLY ORDERED** that Plaintiff may file a motion for costs and attorneys' fees within fourteen (14) days of the entry of this Order pursuant to the HMAs and A.R.S. §12-341.01.

Dated this 24th day of February, 2026.

Honorable Diane J. Humetewa
United States District Judge